**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

RAYMOND D. WORMACK,      )
     )
        Plaintiff,      )
     )
         v.      )     Civil Action No. 11-1437
     )
ERIC K. SHINSEKI, Secretary, Department    )
of Veterans Affairs Agency,      )
     )
        Defendant.      )

## <u>MEMORANDUM OPINION</u>

**I.**      **INTRODUCTION**

Currently pending before the Court is Defendant Eric K. Shinseki's Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Docket Nos. 9, 10; *see also* Docket No. 14). Defendant argues that Plaintiff Raymond D. Wormack, who proceeds pro se in this employment discrimination case, failed to effectuate proper service on Defendant, and therefore, the Court never obtained personal jurisdiction over Defendant. (*Id.*). The Court agrees with Defendant that dismissal pursuant to Rule 12(b)(2) is appropriate and also finds that Plaintiff's failure to prosecute his case warrants dismissal under Rule 41 of the Federal Rules of Civil Procedure. Upon consideration of all the parties' submissions and for the reasons outlined herein, Defendant's Motion to Dismiss is GRANTED, and Plaintiff's Complaint is dismissed, with prejudice.

## II.    BACKGROUND[1]

Plaintiff brings his claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, for the discrimination he allegedly suffered based on race, sex, and reprisal.[2] (Docket No. 4 at ¶¶ 1, 2, 9). Plaintiff is an African American male who began his employment with the Community Based Care Service Line at the Veterans Affairs ("VA") Medical Center in Pittsburgh, Pennsylvania, in March 2007 as a Social Worker. (Docket No. 4 at ¶ 5; Docket No. 10-1 at 4).[3] His Title VII claims arise out of the change in his "tenure group" from "Career Conditional" status to "Excepted without time limit," which he alleges voided his seniority and violated an agreement existing between him and the VA. (Docket No. 4 at ¶¶ 2, 10).

---

[1]    The Court acknowledges that "a *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976) (quoting *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S. Ct. 594 (1972) (per curiam)); *see also Higgs v. Attorney Gen. of the United States,* 655 F.3d 333, 339 (3d Cir. 2011) (stating, "The obligation to liberally construe a *pro se* litigant's pleadings is well-established") (citing *Estelle,* 429 U.S. at 106; *Haines,* 404 U.S. at 520-21; *Capogrosso v. The Supreme Court of New Jersey,* 588 F.3d 180, 184 n.1 (3d Cir. 2009)). Under Rule 8(f) of the Federal Rules of Civil Procedure, the Court also has an obligation to construe all pleadings so "as to do substantial justice." FED. R. CIV. P. 8(f).

[2]    Although Plaintiff offers no further details regarding his "reprisal" claim in his Complaint or his other submissions, the Court construes this claim to refer to reprisal, or retaliation, for prior protected EEO activity. *See, e.g., Fleeger v. Principi,* 221 F. App'x 111, 114-15 (3d Cir. 2007) (referring to and analyzing the plaintiff's reprisal claim as a Title VII retaliation claim); *Wadhwa v. Shinseki,* No. 10-5094, 2012 WL 1578427, at *1-3 (E.D. Pa. May 7, 2012) (same). The Final Agency Decision from the Office of Employment Discrimination Complaint Adjudication, Department of Veterans Affairs, clarifies that Plaintiff's reprisal claim arises from his protected prior EEOC activity. (*See* Docket No. 10-1 at 8-9).

[3]    Defendant has attached the Final Agency Decision from the Office of Employment Discrimination Complaint Adjudication, Department of Veterans Affairs, to the brief in support of his pending motion. (*See* Docket No. 10-1). In response to Defendant's motion, Plaintiff has provided the Court with the decision of the Equal Employment Opportunity Commission, which affirmed the Final Agency Decision. (*See* Docket No. 13 at 3-7). These documents, which are matters of public record, pertain to the administrative proceedings that have given rise to the instant action. (*See* Docket No. 10-1; Docket No. 13 at 3-7). Because Defendant moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(2), the Court may consider these documents to resolve Defendant's motion even though they are matters outside the pleadings. *See Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66 n.9 (3d Cir. 1994) (explaining that a Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings" and "therefore, at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion for lack of in personam jurisdiction"). Accordingly, the Court has considered these documents.

Prior to filing his Complaint in this Court, Plaintiff filed a formal EEO complaint on June 2, 2008. (*See* Docket No. 10-1 at 3). After the VA's Office of Employment Discrimination Complaint Adjudication concluded its investigation, Plaintiff requested an immediate final agency decision without a hearing. (*Id.*). The VA concluded in its April 6, 2009 Final Agency Decision that Plaintiff did not suffer discrimination based on sex, race, or reprisal. (*Id.* at 10). The Final Agency Decision clarifies that Plaintiff, like all other social workers in the VA, worked under an "excepted without time limit" appointment, meaning he served a one year probationary period on "career conditional" status[4] before his tenure group changed to "career." (Docket No. 10-1 at 4). Plaintiff's one year as "career conditional" began on March 4, 2007, and on March 4, 2008, his tenure group changed to "career." (*Id.*).

The Final Agency Decision clarifies this change in status further, stating that the move from "career conditional" to "career" did not alter Plaintiff's appointment or "hiring status." (*Id.* at 8). Rather, "[t]his action was taken in the normal course of business, as a routine application of standard personnel administration procedures to change the complainant's tenure group at the end of his probationary period." (*Id.*). Despite Plaintiff's assertion otherwise, the Final Agency Decision indicates that the conversion from "career conditional" to "career" is actually beneficial, as it provides Plaintiff with "permanent employment status" and "a higher degree of job security and protection against discharge than he had during his probationary period." (*Id.*).

Plaintiff appealed the agency decision to the Equal Employment Opportunity Commission ("EEOC"), and the EEOC affirmed the Agency's decision on August 25, 2011. (*See* Docket No. 13 at 7). The EEOC found that Plaintiff "failed to show that he was injured or

---

[4]   The Final Agency Decision further explains that the one year of "career-conditional" status is a benefit to employees promulgated under The Veterans Health Care, Capital Asset and Business Improvement Act of 2003, Pub. Law 108-170. (Docket No. 10-1 at 4). Prior to the passage of this legislation, employees such as Plaintiff served three years on "career-conditional" status before their tenure changed to "career." (*Id.*).

otherwise subjected to an adverse action, notwithstanding that he received a letter misstating his appointment status." (*Id.* at 4-5).

Plaintiff initiated the instant lawsuit by filing a Motion for Leave to Proceed *In Forma Pauperis* with his Complaint attached on November 23, 2011. (Docket No. 1). The Court denied this Motion on November 28, 2011 and instructed Plaintiff to pay the appropriate filing fee by December 14, 2011 or his case would be dismissed for failure to prosecute. (Docket No. 2). On December 13, 2011, Plaintiff paid the filing fee, and his Complaint was filed. (Docket Nos. 3-4).

Four months later, on April 12, 2012, this Court entered an Order indicating "that the complaint would be dismissed, without prejudice, pursuant to Fed. R. Civ. P. 4(m) for failure to make service on the defendant within 120 days of the filing of the complaint, on April 26, 2012, unless good cause is shown why such service was not made within that period." (Docket No. 5). Plaintiff responded by stating that he "has mailed the defendant on or around 12-13-11 via first class mail. Plaintiff may send additional copies of the Motion via certified mail if it would please the court." (Docket No. 6). The Court construed this response to mean that Plaintiff had not completed proper service and granted him an extension of time to do so. (Docket No. 7). Plaintiff was ordered "to effectuate proper service of process upon Defendant, pursuant to Rule 4 of the Federal Rules of Civil Procedure, AND file proof of said service with the Clerk of Court for the Western District of Pennsylvania by no later than **May 24, 2012**." (*Id.*) (original emphasis retained). Plaintiff was also informed that no further extensions would be granted and that failure to comply with the Court's Orders, Policies, and Procedures could result in dismissal of his Complaint for failure to prosecute. (*Id.*).

On May 24, 2012, the final day by which Plaintiff was ordered to complete service, he filed a Notice of Mailing by Certified Mail comprised of certified mail receipts postmarked April 26, 2012. (Docket No. 8). No summons had been issued by the Clerk's Office as of this time.

Defendant filed a Motion to Dismiss and supporting brief on June 26, 2012. (Docket Nos. 9, 10). Defendant initially moved for dismissal pursuant to Rule 12(b)(2), as well as Rule 12(b)(6) due to Plaintiff's purported failure to timely exhaust administrative remedies. (*Id.*). Thereafter, the Court entered its standard order on motions practice, explaining to Plaintiff that he had twenty-one days to file a responsive brief. (Docket No. 11). When Plaintiff failed to file a response to Defendant's motion, the Court ordered Plaintiff to show good cause why his Complaint should not be dismissed. (Docket No. 12). On July 23, 2012, the same day that the Court entered a show cause order, Plaintiff filed a Response to Defendant's Motion to Dismiss and attached the EEOC's Final Decision to his submission. (Docket No. 13). A summons was also issued as to Defendant Shinseki on this date. (Text Entry dated July 23, 2012). On July 31, 2012, Defendant filed a Motion to Withdraw Alternative Argument in Previously Filed Motion to Dismiss,[5] wherein Defendant requested to remove his administrative exhaustion argument from the Court's consideration. (Docket No. 14). The Court granted this Motion on the same day. (Docket No. 15).

As the parties have not sought leave to submit reply or sur-reply briefs, Defendant's Motion to Dismiss under Rule 12(b)(2) is fully briefed and ripe for disposition.

---

[5]     Defendant withdrew his Rule 12(b)(6) argument on July 31, 2012 after Plaintiff filed his Response to Defendant's Motion to Dismiss with the EEOC decision attached. (*See* Docket Nos. 13-15). Defendant explains that he was "unaware" of the EEOC's Final Decision, which "renders the alternative argument [about administrative exhaustion] incorrect." (Docket No. 14 at 1). Defendant had premised his Rule 12(b)(6) argument on a belief that Plaintiff had not appealed the Final Agency Decision to the EEOC and instead waited until well beyond the ninety-day limit had passed to institute his suit in federal court. (*See* Docket Nos. 13-15).

## III.    LEGAL STANDARD

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for lack of personal jurisdiction.  FED. R. CIV. P. 12(b)(2).  The defendant bears the initial burden of raising a lack of personal jurisdiction defense.  FED. R. CIV. P. 12(h)(1).  When the plaintiff fails to serve a defendant with a summons and complaint in accordance with Rule 4 of the Federal Rules of Civil procedure, the action may be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.  *See Mathies v. Silver*, 266 F. App'x 138, 140 (3d Cir. 2008) (citing *Ayres v. Jacobs & Crumplar*, 99 F.3d 565, 569 (3d Cir. 1996)).  "[T]he party asserting the validity of service bears the burden of proof on that issue."  *Grand Ent. Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993) (citation omitted).

Rule 4 of the Federal Rules of Civil Procedure "sets forth the procedure by which a court obtains personal jurisdiction over the defendant."  *Ayres*, 99 F.3d at 569; *see also Mathies*, 266 F. App'x at 139-40; *Bouchard v. US Airways*, No. 10-1381, 2011 WL 2470031, at *1-2 (W.D. Pa. June 20, 2011) (Ambrose, J.).  The process of obtaining personal jurisdiction is a "two step procedure: first, a complaint must be filed with the Clerk of the Court where the Clerk issues a summons to the plaintiff or the plaintiff's attorney who shall be responsible for service and, second, the summons and a copy of the complaint must be effectively and timely served upon the defendant."  *Ayres*, 99 F.3d at 569.

To obtain valid process, the Clerk of Court must issue a summons as to the defendant, and the plaintiff must then serve this summons, as well as a copy of the complaint, on the defendant.  *Id*.  Pursuant to Rule 4(a), a summons must, *inter alia*, "be signed by the clerk" and "bear the court's seal."  FED. R. CIV. P. 4(a); *Ayres*, 99 F.3d at 569.  The signature and seal "assures the defendant that the process is valid."  *Ayres*, 99 F.3d at 569.  Because the parties

cannot waive a void summons, "the failure of a plaintiff to obtain valid process from the court to provide it with personal jurisdiction over the defendant in a civil case is fatal to the plaintiff's case." *Id*.

To properly serve an agency of the United States or a United States officer or employee sued in an official capacity, "a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer or employee." FED. R. CIV. P. 4(i)(2). Service on the United States requires delivery of a copy of the summons and complaint "to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in writing filed with the court clerk." FED. R. CIV. P. 4(i)(1)(A)(i). Alternatively, a party may send a copy of the summons and complaint by registered or certified mail to the civil-process clerk at the United States Attorney's office. FED. R. CIV. P. 4(i)(1)(A)(ii). In addition, to complete service upon the United States, a party must send a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at Washington, D.C. FED. R. CIV. P. 4(i)(1)(B).[6]

## IV. DISCUSSION

### A. Lack of Personal Jurisdiction

Defendant argues that Plaintiff's Complaint should be dismissed for lack of personal jurisdiction because Plaintiff failed to obtain a proper summons from the Court and also did not timely effectuate service of the Complaint and Summons on Defendant. (Docket No. 10 at 3). The Court finds that Plaintiff has not fulfilled his burden to demonstrate that he has served Defendant in accordance with Rule 4, and it is evident from the Court's own review of the

---

[6]     Rule 4(i)(1)(C) is not applicable here because the present matter does not "challenge[] an order of a nonparty agency or officer of the United States." *See* FED. R. CIV. P. 4(i)(1)(C).

Docket in this matter that Plaintiff has not effectuated proper and timely service. (*See* Docket No. 13). For those reasons, the Court agrees with Defendant that Plaintiff's attempts at service are ineffective. The Court also acknowledges that, to date, service remains incomplete.

At the time that Defendant moved to dismiss Plaintiff's Complaint, no summons had been issued. Plaintiff even conceded in his Response to Defendant's Motion to Dismiss that "he did not recall that a summons was needed to [sic] when filing." (Docket No. 13 at 1). On July 23, 2012, the same day Plaintiff filed his Response, the Clerk's Office issued a Summons as to Defendant Shinseki. (*See* Text Entry dated July 23, 2012). The Clerk's issuance of the Summons, however, does not constitute complete and proper service. *See* FED. R. CIV. P. 4.

No information about the content of the July 23, 2012 Summons is available on the Docket for this case, and Plaintiff has not provided the Court with a copy or any description of the Summons. Additionally, there is no evidence that the Summons was actually served on Defendant Shinseki, and Plaintiff has not represented to the Court that he has fulfilled his obligation to serve this Summons. *See* FED. R. CIV. P. 4(c)(1) ("A summons must be served with a copy of the complaint."). Therefore, the record does not demonstrate that the Summons was signed and sealed in accordance with Rule 4(a) and actually mailed to Defendant; instead, it is only apparent that a Summons as to Defendant Shinseki was issued by the Clerk's Office on July 23, 2012.[7] Plaintiff has thus failed to meet his burden to demonstrate that he properly obtained and served a summons on Defendant Shinseki. *See Grand Ent. Group, Ltd.*, 988 F.2d at 488.

Additionally, there is no evidence that Plaintiff served all of the necessary entities with copies of the Complaint and Summons in accordance with Rules 4(i)(1)-(2). These Rules require

---

[7] Defendant has responded to the Complaint in filing his Motion to Dismiss, which demonstrates that he either received a copy of it from Plaintiff or was otherwise notified of Plaintiff's suit through unidentified means. Therefore, absent additional information to the contrary, it appears as though Defendant has, at the very least, received a copy of the Complaint.

Plaintiff to serve (1) the United States employee sued in an official capacity; (2) the United States Attorney for the district where the action is brought, or the Assistant United States Attorney or clerical employee designated by the United States Attorney, or the civil-process clerk at the United States Attorney's Office; and (3) the Attorney General of the United States at Washington, D.C. *See* FED. R. CIV. P. 4(i)(1)-(2). In his Response to Defendant's Motion to Dismiss, Plaintiff did not identify which of the required individuals he has served. (*See* Docket No. 13). His Notice of Mailing by Certified Mail lists the "Civil Process Clerk, US Attorney's Office," "Secretary, Eric Shinseki," and "Director Wolfe[,] Dept[.] of VA."[8] (Docket No. 8). The Attorney General of the United States is absent from this list, and Plaintiff has not represented to the Court that he has attempted service on this individual, as is required by Rule 4(i)(1)(B). *See* FED. R. CIV. P. 4(i)(1)(B). Furthermore, Plaintiff has not provided the Court with any information regarding what he actually mailed to the individuals listed in the Notice. Given the fact that no additional summonses have been issued at this time, there is no record evidence that Plaintiff has obtained and served summonses on the individuals listed in the Notice of Mailing. Even if Plaintiff had served copies of the Complaint on these individuals, he has not complied with his Rule 4(i) obligation to obtain summonses and serve them, along with the Complaint, on each of the individuals listed in the aforementioned subsections of Rule 4(i)(1)-(2). *See* FED. R. CIV. P. 4(i)(1)-(2).

The Court acknowledges that, as a pro se litigant, Plaintiff has less familiarity with the Federal Rules of Civil Procedure than a plaintiff who is represented by counsel. In Plaintiff's Response to Defendant's Motion to Dismiss, when discussing why he had failed to obtain a summons, he states, "This is not the Plaintiff's profession." (Docket No. 13 at 1). All litigants,

---

[8] Defendant clarifies that this individual is Terry Gerigk Wolf, Director of the Veterans Affairs Pittsburgh Health System. (Docket No. 10 at 2).

however, must comply with the Rules regardless of whether they are represented by counsel. *See Byrne v. Cleveland Clinic*, 684 F. Supp. 2d 641, 649 (E.D. Pa. 2010) ("While the Court of Appeals for the Third Circuit traditionally has given *pro se* litigants 'greater leeway where they have not followed the technical rules of pleading and procedure,' . . . all parties must nonetheless follow the Federal Rules of Civil Procedure") (internal citations omitted). Even though Plaintiff proceeds pro se, he had access to a Pro Se Manual, which is readily available to the public on the Court's official website, to guide him through the process of completing service on Defendant.[9] This packet sets forth how to file a complaint and how service of process is achieved. Additionally, Plaintiff is not a novice to the Court, as he filed a prior suit against Defendant Shinseki. *See Wormack v. Shinseki*, No. 09-916, 2010 WL 4052189 (W.D. Pa. Oct. 14, 2010) (dismissing Plaintiff's first amended complaint, with prejudice); *Wormack v. Shinseki*, No. 09-916, 2010 WL 2650430 (W.D. Pa. July 1, 2010) (dismissing Plaintiff's original complaint, without prejudice, and ordering him to file an amended complaint to cure pleading deficiencies). The Docket in that case shows that Plaintiff obtained and served a summons on Defendant. (*See Wormack v. Shinseki*, No. 09-916, Text Entry dated July 14, 2009; No. 09-916, Docket Nos. 3, 4).

Plaintiff was given multiple opportunities to provide the Court with some explanation for his failure to complete service, yet he has not provided any reason beyond attributing his service deficiencies and untimeliness to his pro se status. (*See* Docket No. 13 at 1). His submissions to the Court fail to illustrate what service he has accomplished at this time. (*See* Docket Nos. 6, 13). Therefore, Plaintiff has not satisfied his burden of establishing his conformity with Rule 4. *See Grand Ent. Group, Ltd.*, 988 F.2d at 488. Indeed, the Court's review of the Docket entries in

---

[9]    *See Pro Se Package*: *A Simple Guide to Filing a Civil Action*, U.S. DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA, http://www.pawd.uscourts.gov/Documents/Forms/PROSE_manual_2009.pdf.

this matter reveals that Plaintiff's service obligations remain unfulfilled, despite the Court granting Plaintiff an extension of time beyond the Rule 4(m) 120-day period to effectuate service. (*See* Docket No. 7); *see also* FED. R. CIV. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). Because Plaintiff has not complied with Rule 4 or the Court's Orders directing him to complete service, and because he has otherwise failed to establish that he has effectuated timely and proper service, the Court finds that valid service has not been made to confer personal jurisdiction over Defendant. *See Ayres*, 99 F.3d at 569; *see also Mathies*, 266 F. App'x at 139-40; *Bouchard*, 2011 WL 2470031, at *2. Therefore, the Court grants Defendant's Motion to Dismiss pursuant to Rule 12(b)(2) on this basis.

**B.      Failure to Prosecute**

Alternatively, the Court finds that Plaintiff's Complaint must be dismissed for his failure to prosecute, as Plaintiff has repeatedly failed to comply with this Court's Orders directing him to complete service and has ignored his service obligations under the federal procedural rules. Rule 41(b) of the Federal Rules of Civil Procedure authorizes this Court to dismiss a plaintiff's case on these grounds. *See* FED. R. CIV. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."). This Court may *sua sponte* dismiss a case under Rule 41 but "should use caution in doing so." *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008). In determining whether dismissal is warranted, this Court must consider the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other

than dismissal; and (6) the meritoriousness of the claim or defense. *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). The Court need not find each and every factor in order to justify dismissal. *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988). When a district court has doubt, the decision of whether to dismiss "'should be resolved in favor of reaching a decision on the merits' and 'alternative sanctions should be used.'" *Roman v. City of Reading*, 121 F. App'x 955, 958 (3d Cir. 2005) (quoting *Scarborough v. Eubanks*, 747 F.2d 871, 878 (3d Cir. 1984)); *see also Barger v. Walton*, 260 F. App'x 476, 478 (3d Cir. 2008). The *Poulis* factors, however, do not provide a "magic formula whereby the decision to dismiss or not to dismiss becomes a mechanical calculation easily reviewed by" the Court of Appeals. *Durah v. Rustin*, No. 05-1709, 2005 WL 2924788, at *2 (W.D. Pa. Oct. 10, 2006) (quoting *Mindik v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992)). In this Court's estimation, after applying the *Poulis* factors in the manner described below, dismissal of this case is appropriate due to Plaintiff's failure to comply with this Court's Orders and to otherwise prosecute this case.

### 1. The extent of a party's personal responsibility

As noted previously, Plaintiff is representing himself pro se. Therefore, he is personally responsible for prosecuting his case and for adhering to this Court's Orders. *See Briscoe*, 538 F.3d at 258 ("a pro se plaintiff is responsible for his failure to . . . comply with a court's orders."). Plaintiff has not provided the Court with any indication that he has not received the Court's Orders and instead attributes any failures in completing service on his pro se status. (*See* Docket No. 13 at 1). Moreover, Plaintiff is not a novice pro se litigant given his prior prosecution of a case pro se against the VA. *See Wormack*, 2010 WL 4052189, 2010 WL 2650430. Because Plaintiff has failed to fulfill his obligation to comply with the Court's Orders, this factor weighs in favor of dismissal.

### 2. Prejudice to the adversary

12

There is little or no evidence of prejudice to Defendant, aside from the few months of delay resulting from Plaintiff's failure to complete service in compliance with the Court's Orders and the Federal Rules of Civil Procedure. Certainly, Defendant has been forced to defend this action. He has filed a motion to dismiss Plaintiff's Complaint, but the parties have not yet engaged in discovery or undertaken costly additional litigation activities as a result of Plaintiff's failure to serve Defendant. *See Briscoe*, 538 F.3d at 259 (holding that prejudice equates to "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party."). Accordingly, this factor is neutral.

### 3. A history of dilatoriness

There has been a pattern of dilatoriness by Plaintiff in this case, which is demonstrated by his noncompliance with the deadlines set forth by the federal procedural rules and those specifically established by the Court's Orders. After his Complaint was filed, Plaintiff failed to serve it, along with a summons, on Defendant within 120 days as required under Rule 4(m). *See* FED. R. CIV. P. 4(m). Plaintiff provided very little information to justify his failure to serve, but the Court construed his Response to the Order to Show Cause to mean that he had not completed service and thus granted him an extension. (Docket Nos. 6, 7). The Court also informed Plaintiff that no further extensions of time would be permitted. (*See* Docket No. 6). To date, approximately nine months after Plaintiff's Complaint was filed, Plaintiff has still not completed service.

Plaintiff further failed to comply with the Court's Order by failing to file a timely response to Defendant's Motion to Dismiss. The Court's Order on Motions Practice specifically states that Plaintiff has twenty-one days to respond to a dispositive motion, meaning that the Response was due by July 17, 2012. (Docket No. 11). Plaintiff filed his Response on July 23,

2012, which is the same day that the Court entered an Order to Show Cause with regard to Plaintiff's failure to comply with the Court's Order. (Docket Nos. 12, 13). Furthermore, as is discussed above, this untimely Response did not meaningfully address the merits of Defendant's arguments as to the deficient service. (*See* Docket No. 13).

The United States Court of Appeals for the Third Circuit has held that "[t]ime limits imposed by the rules and the court serve an important purpose for the expeditious processing of litigation. If compliance is not feasible, a timely request for an extension should be made to the court. A history . . . of ignoring these time limits is intolerable." *Poulis*, 747 F.2d at 868. Plaintiff never sought any extensions time before the deadlines imposed by the Court or the Federal Rules of Civil Procedure had expired. Indeed, the Court *sua sponte* granted an extension to Plaintiff in this case, which provided him with additional time to complete service. (*See* Docket No. 7). Despite the extension, he has still failed to make appropriate service.

Plaintiff's repeated failure to meet deadlines established by the Federal Rules of Civil Procedure and by this Court demonstrates a history of dilatoriness. This factor weighs in favor of dismissal.

### 4. *Whether the party's conduct was willful or in bad faith*

Plaintiff's repeated failure to comply with the Federal Rules of Civil Procedure or the Court's Orders is not likely the product of willfulness or bad faith. Limited evidence of record exists that would indicate whether bad faith contributed to Plaintiff's noncompliance, as his submissions to the Court do not provide much justification for his tardiness.

Although Plaintiff's bare submissions have already been described and analyzed in the context of his failure to execute service, the Court now evaluates them again with regard to whether they exhibit willfulness or bad faith. In his Response to the Court's April 12, 2012 Show Cause Order, Plaintiff states that he attempted to make service via first class mail "on or

around 12-13-11" and could "send additional copies of the Motion via certified mail if it would please the Court." (Docket No. 6). It is unclear from this statement what Plaintiff mailed, to whom it was mailed, and what the "Motion" is to which he refers. (*See id.*). When addressing his failure to properly serve Defendant in his Response to Defendant's Motion to Dismiss, Plaintiff states that he did not know that he needed to obtain a summons and that his noncompliance of the procedural rules was a product of his pro se status. (Docket No. 13 at 1). This excuse is not entirely credible, as Plaintiff executed service of a summons on Defendant in a prior case. (*See Wormack v. Shinseki*, No. 09-916, Text Entry dated July 14, 2009; No. 09-916, Docket Nos. 3, 4).

Willful conduct "involves intentional or self-serving behavior" rather than conduct that is "merely negligent or inadvertent." *Briscoe*, 538 F.3d at 262; *see also N'Jai v. Floyd*, Civ. A. No. 07-1506, 2009 WL 1531594, at *19 (W.D. Pa. May 29, 2009) ("tardiness, which is not excused by inability, is not necessarily willful.") If Plaintiff's excuses are taken at face value, his noncompliance does not rise to the level of willfulness, as his conduct appears to be the product of negligence rather than "intentional or self-serving" ignorance of the federal procedural rules and the Court's directives. *Briscoe*, 538 F.3d at 262. Therefore, this factor does not weigh in favor of dismissal.

### 5. Alternative sanctions

There are no alternative sanctions available to the Court which would appropriately remedy Plaintiff's failure to comply with the Court's Orders. *See Whitney v. Barkley*, No. 10-1705, 2011 WL 1230351, at *2 (W.D. Pa. Feb. 9, 2011) ("Plaintiff is proceeding *pro se* and has not responded to the Court's order, and it is not clear that any sanction other than dismissal will properly redress Plaintiff's refusal to comply."). Plaintiff has been advised on three occasions that his failure to comply with the Court's Orders may result in the dismissal of his case but has

not responded to same. (*See* Docket Nos. 5, 7, 12). Also, despite his pro se status, Plaintiff has an obligation to abide by the Federal Rules of Civil Procedure and has repeatedly failed to do so. Accordingly, dismissal is the only appropriate sanction that will properly redress Plaintiff's refusal to comply.[10]

### 6. *Meritoriousness of Plaintiff's claims*

As to the meritoriousness of Plaintiff's claims, the Court applies a standard in which "[a] claim, or defense will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Poulis*, 747 F.2d at 869-70 (citing *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 195 (3d Cir. 1984); *Feliciano v. Reliant Tooling Co.,* 691 F.2d 653, 657 (3d Cir. 1982); *Farnese v. Bagnasco,* 687 F.2d 761, 764 (3d Cir. 1982)). This standard is less stringent than what is required at the summary judgment stage and is more akin to the Rule 12(b)(6) standard. *See Barger v. Walton*, 260 F. App'x 476, 478 n.2 (3d Cir. 2008) (citing *Poulis*, 747 F.2d at 869-70); *Ghana v. New Jersey State Parole Bd.*, 2011 WL 3608633, at *10 (D.N.J. Aug. 15, 2011).

The Court is also cognizant of Plaintiff's pro se status when determining the meritoriousness of his claims. Accordingly, the Court will interpret the Complaint liberally and in his favor. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Estelle v. Gamble*, 429 U.S. at 97, 106 (1976) (citation omitted). Despite the liberal construction that is afforded to pro se complaints, the Court need not accept legal conclusions disguised as statements of fact, unsupported conclusions, or unwarranted references. *See Baraka v. McGreevey,* 481 F.3d 187, 195 (3d Cir. 2007); *Okpor v. Kennedy Health Sys.,* No. 10-1012, 2010 WL 3522784, at *2 (D.N.J. Sept. 2, 2010). "[A] pro se complaint must still contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wallace v. Fegan*, 455 F.

---

[10]     The Government has not sought attorney fees or costs. (*See* Docket No. 9).

App'x 137, 139 (3d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).

In his Complaint, Plaintiff claims that the VA discriminated against him on the basis of his race, gender, and reprisal by modifying his tenure group from "Career Conditional to "Excepted without time limit." (Docket No. 4 at ¶¶ 2, 9, 10). Plaintiff states that this change in status "rendered his seniority null and void regarding retention and violated his agreement with the [D]epartment of Veterans [A]fairs to work under a career conditional appointment and enjoy the benefits and securities offered by career conditional appointment." (*Id.* at ¶ 2). No further factual allegations are pled in support of Plaintiff's claims.

Title VII makes it unlawful for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2. It further provides, in part, that "except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m). To establish a prima facie case of Title VII discrimination, a plaintiff must show: "(1) that he is a member of a protected class, (2) that he suffered some form of adverse employment action, and (3) that this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently." *Page v. Trs. of Univ. of Pennsylvania,* 222 F. App'x 144, 145 (3d Cir. 2007) (applying these three elements to a Title VII sex discrimination claim) (citing

*Jones v. School Dist. of Phila.,* 198 F.3d 403, 410 (3d Cir. 1999) (applying these three elements to a Title VII race discrimination claim)).  Although Plaintiff has pled that he is a member of a protected class based on his race and gender, the factual allegations in his Complaint do not establish that he has suffered an adverse employment action.  (*See* Docket No. 4).  Plaintiff has also not pled facts to support the existence of an inference of unlawful discrimination or of any causal connection between Plaintiff's race and gender and his change in tenure group.  (*See id.*).

The only potentially adverse employment action before this Court is that Plaintiff's tenure group was modified from "Career Conditional" status to "Excepted without time limit." (*See* Docket No. 4 at ¶¶ 2, 9, 10).    "In order to be entitled to relief [under Title VII], a plaintiff must have suffered a cognizable injury."  *Storey v. Burns Intern. Sec. Servs.,* 390 F.3d 760, 764 (3d Cir. 2004); *see also Caver v. City of Trenton,* 420 F.3d 243, 256 (3d Cir. 2005) (quoting *Nelson v. Upsala Coll.,* 51 F.3d 383, 388 n. 6 (3d Cir.1995)) ("'[A]n adverse employment action involves some harm to an employee's employment opportunities.'").  The United States Court of Appeals for the Third Circuit has "defined 'an adverse employment action' under Title VII as an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"  *Storey*, 390 F.3d at 764 (quoting *Cardenas v. Massey,* 269 F.3d 251, 263 (3d Cir. 2001)).  Or, in terms of the statute, an adverse employment action occurs when an employer "fail[s] or refuse[s] to hire or to discharge any individual, or otherwise . . . discriminate[s] against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e; *see also Storey,* 390 F.3d at 764. "Although direct economic harm is an important indicator of a tangible adverse employment action, it is not the sine qua non. If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible

adverse employment action may be found." *Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 153 (3d Cir. 1999) (citation omitted).

Even though Plaintiff alleges that the change in tenure group affected his seniority, retention, and violated his "agreement" with the VA, the agency and EEOC decisions clarify that Plaintiff's change in tenure group did not negatively impact his employment. (*See* Docket No. 10-1; Docket No. 13 at 3-7). Rather, this change was a "routine application of standard personnel administration procedures to change the complainant's tenure group at the end of his probationary period." (Docket No. 10-1 at 8). With this modification, Plaintiff gained several advantages, including "permanent employment status" and "a higher degree of job security and protection against discharge." (*Id.*). Therefore, in the Court's estimation, Plaintiff did not suffer any harm through this routine change in status.

Moreover, Plaintiff has not addressed the third element of a prima facie case of Title VII discrimination as he has not made any non-conclusory, factual allegations to support this element in his Complaint. (*See* Docket No. 4). The Complaint contains no allegations demonstrating that Plaintiff's change in tenure group, which is not an adverse employment action, "gives rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently." *Page*, 222 F. App'x at 145. For these reasons, Plaintiff has not pled sufficient facts to state Title VII discrimination claims based on gender or race, and these claims are thus subject to dismissal under Rule 12(b)(6) and *Iqbal* and *Twombly*.

Plaintiff's reprisal claim similarly lacks merit. "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: '(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between . . . the protected activity and the adverse employment action.'" *Moore v. City of Philadelphia,* 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson,*

51 F.3d at 386). Although Plaintiff does not identify in his Complaint the protected activity in which he engaged, the Final Agency Decision clarifies that his reprisal claim arises from his protected prior EEOC activity. (*See* Docket No. 4; Docket No. 10-1 at 8-9). For the same reasons as described above, however, Plaintiff has not established the second element of the prima facie case of Title VII retaliation. He has also not pled any factual allegations in support of the third element to a prima facie case of retaliation. (*See* Docket No. 4). Therefore, Plaintiff has not stated a plausible claim for relief with regard to his Title VII retaliation claim, and it is subject to dismissal under Rule 12(b)(6) and *Iqbal* and *Twombly*.

To that end, the Court concludes that Plaintiff's claims lack merit, and this factor weighs in favor of dismissing Plaintiff's Complaint.

### 7. Balancing the Poulis Factors

In weighing the *Poulis* factors to determine whether to dismiss Plaintiff's Complaint for failure to prosecute, the Court recognizes that no one factor is determinative and all six factors are to be taken into consideration. *See Barger*, 260 F. App'x at 478; *Poulis,* 747 F.2d at 868-70; *Johnson-Shavers v. MVM, Inc.*, No. 04-666, 2008 WL 304938, at *4 (D.N.J. Jan. 29, 2008). In the instant matter, the following factors weigh in favor of dismissal: the extent of Plaintiff's personal responsibility, his history of dilatoriness, and lack of merit of his claims. Balancing these factors with those that disfavor dismissal or are neutral weighs in favor of dismissing Plaintiff's Complaint. For these reasons, it is appropriate to dismiss Plaintiff's Complaint under Rule 41 for Plaintiff's failure to prosecute.

## V.      CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss is GRANTED and Plaintiff's

Complaint is DISMISSED, with prejudice.  An appropriate Order follows.

_s/Nora Barry Fischer_
Nora Barry Fischer
United States District Judge

cc/ecf:  All counsel of record

       Raymond D. Wormack
       210 Snyder Street
       Connellsville, PA 15425
       (Regular & Certified Mail)

Date:  September 6, 2012